# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Richmond Division

DERRICK JASON GREER,            )
                                )
            Plaintiff,           )
                                )
v.                               )   Civil Action No. 3:16CV850–HEH
                                )
PETERSBURG BUREAU OF POLICE      )
*et al.*,                        )
                                )
            Defendants.          )

## MEMORANDUM OPINION
### (Granting Motions to Dismiss)

THIS MATTER is before the Court on Defendants' Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff Derrick Jason Greer ("Plaintiff") filed his five-count Compliant on October 19, 2016. (ECF No. 1.) Plaintiff's allegations center on the events surrounding the termination of his employment as a police officer for the city of Petersburg, Virginia. Plaintiff alleges defamation, retaliation in violation of the First Amendment of the United States Constitution and the Constitution of Virginia, violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution, and supervisor liability for the alleged retaliation.

The Complaint names seven defendants. They include the Petersburg Bureau of Police ("Bureau"), four individual police officers, an Assistant Commonwealth's Attorney, and the former Petersburg City Attorney. Six of the Defendants have filed motions to dismiss. Defendant Tiffany Buckner ("Buckner"), Assistant Commonwealth's Attorney for the City of Petersburg, has moved to dismiss the defamation and retaliation claims raised against her. (ECF No. 18.) Defendant John I. Dixon, III ("Chief Dixon"), former Chief of

the Petersburg Bureau of Police, has moved to dismiss the defamation and supervisor liability claims raised against him. (ECF No. 14.) The Bureau, Sergeant Hervie Cheatham ("Sgt. Cheatham"), and Sergeant Haywood James, III (" Sgt. James") have moved to dismiss the defamation claims raised against them. (ECF No. 30.) And Captain Edwin Jones ("Capt. Jones") has moved to dismiss the supervisor liability claim raised against him. (ECF No. 30.) The only other defendant, Brian K. Telfair, former Petersburg City Attorney, has not moved to dismiss any claims but rather filed an answer. (ECF No. 17.)

All parties have filed memoranda supporting their respective positions. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J).

For the reasons set forth below, the Court will grant Defendants' motions.

## I. BACKGROUND

As required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court assumes Plaintiff's well-pleaded allegations to be true and views all facts in the light most favorable to him. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan, LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citing *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). At this stage, the Court's analysis is both informed and constrained by the four corners of Plaintiff's Complaint. Viewed through this lens, the facts are as follows.

Plaintiff worked as a Petersburg police officer from June 2014 until his termination in November 2015. (*See* Compl. ¶¶ 21, 109.) At all relevant times, Chief Dixon, Capt. Jones, Sgt. Cheatham, and Sgt. James also worked for the Bureau. (*Id.* ¶¶ 15, 16, 19, 20.)

On January 29, 2015, Plaintiff executed a search warrant on the Petersburg residence of Jeffrey Fisher. (*Id.* ¶ 24.) Plaintiff's partner, Detective Shane Noblin, and several other Petersburg police officers assisted in the search. (*Id.* ¶ 25.) Afterward, Fisher was charged with multiple drug and firearm-related crimes. (*Id.* ¶ 60.)

Plaintiff alleges that, during the search, he witnessed officers intentionally destroying private property and evidence. (*See Id.* ¶¶ 30–47.) On September 10, 2015, during an investigation into the search of Fisher's residence, Plaintiff gave a formal statement to Sgt. James in which he described the officer misconduct. (*Id.* ¶¶ 162–63.) In his statement, Plaintiff also admitted that while searching the house, he noticed some candy on the floor, which he picked up, unwrapped, and ate. (*See id.* ¶¶ 48–52, 164.)

Detective Noblin retired from the Bureau in May 2015. (*Id.* ¶ 62.) Plaintiff was thus required to take over many of Detective Noblin's pending cases. (*Id.* at 63.) But Plaintiff was troubled by some of Detective Noblin's previous conduct. So, in June 2015, Plaintiff approached Buckner and expressed his discomfort in continuing the investigations of Detective Noblin's pending cases. (*Id.* ¶¶ 64–65.) He urged Buckner to dismiss Detective Noblin's cases, stating that "everybody knows [Detective Noblin] is dirty." (*Id.* ¶ 66.) However, Buckner disregarded Plaintiff's concerns. (*Id.* ¶ 67.)

On October 5, 2015, Plaintiff attended a preliminary hearing for one of Detective Noblin's former cases. (*Id.* ¶ 78.) Still wary of Detective Noblin's prior conduct, Plaintiff met with the defendant's attorney and an investigator for the Petersburg Public Defender's Office. (*Id.* ¶ 79.) Plaintiff explained to them his belief that "Detective Noblin was dirty." (*Id.* ¶ 80.) He also stated that he had raised his concerns with Buckner, but that she had ignored them. (*Id.* ¶ 82.)

3

The investigator for the Public Defender's Office communicated Plaintiff's concerns to Fisher's attorney. (*See id.* ¶ 83.) Accordingly, armed with the allegations about Detective Noblin's dishonest conduct and Buckner's indifference, Fisher moved for Buckner to be removed from his case and for her to be replaced by a special prosecutor. (*Id.* ¶¶ 83–85.) The court granted that motion during a hearing on October 20, 2015. (*See id.* ¶ 88.)

Shortly after the hearing, "Buckner approached Plaintiff and yelled at [him]." (*Id.* ¶ 89.) Buckner then reported to Chief Dixon that "Plaintiff made false statements concerning Detective Noblin." (*Id.* ¶¶ 129, 132.)

On the same day, October 20, 2015, Sgt. Cheatham issued Plaintiff a "Notification to Employee of Investigation," marked with the identifier IAU# 15-08. (*Id.* ¶ 90.) IAU# 15-08 included the statement: "The Chief of Police has received allegations from Assistant Commonwealth Attorney Tiffany Buckner regarding the subject employee that has brought the Bureau into disrepute. The credibility of the officer's prior and future testimonies are questionable at this juncture." (*Id.* ¶ 92.) Sgt. Cheatham also notified Plaintiff that he had been reassigned to administrative duties. (*Id.* at 94.)

On October 29, 2015, Sgt. Cheatham issued Plaintiff another notification of investigation. (*Id.* ¶ 95.) This second notification was marked as IAU# 15-07 and included a "Notification of Charges" and a "Disciplinary Report Form." (*Id.* ¶¶ 95, 99, 102.) The investigation documented in IAU# 15-07 concerned the Fisher residence search. (*Id.* ¶¶ 96, 104–106.) IAU# 15-07 charged Plaintiff with "immoral or unbecoming conduct" based on "an admission of moral turpitude (theft) from the subject employee." (*Id.* ¶ 100.) IAU# 15-07 cited Plaintiff's statement from September 2015 acknowledging that he ate candy from the floor of the Fisher residence. (*Id.* ¶ 106.) IAU# 15-07 concluded with a recommendation that

the Bureau terminate Plaintiff's employment as a police officer. (*Id.* ¶ 102.) The Bureau accepted that recommendation and fired Plaintiff on November 10, 2015. (*Id.* ¶ 109.)

On November 16, 2015, "Plaintiff elected to appeal the disciplinary action through the Law-Enforcement Officers Procedural Guarantee Act, Va. Code § 9.1-500 *et seq.*" (*Id.* ¶ 114.) On December 10, 2015, he sent a letter to Chief Dixon, Telfair, and the Human Resources Director for the City of Petersburg "request[ing] a response to his demand for a panel hearing" pursuant to Va Code. § 9.1-504. (*Id.* ¶ 116.) Plaintiff received a response from Telfair on December 17, 2015, directing Plaintiff to provide his available dates for a hearing in January or February 2016. (*Id.* ¶ 117.) On December 22, 2015, Plaintiff sent Telfair his available dates. (*Id.* ¶ 118.)

Plaintiff attempted to follow up with Telfair on January 20, 2016. (*Id.* ¶ 119.) In that communication, Plaintiff told Telfair that several of the dates he had previously identified were no longer available. (*Id.* ¶ 120.) Plaintiff requested that Telfair reply and update Plaintiff on the status of scheduling the hearing. (*Id.*) However, neither Telfair nor any other City or Bureau representative has communicated with Plaintiff since that time. (*Id.* ¶ 122.)

Plaintiff filed his Compliant on October 19, 2016. In Count I, Plaintiff alleges common law defamation against Buckner, Chief Dixon, Sgt. Cheatham, Sgt. James, and the Bureau. Count II and Count III of the Complaint raise retaliation claims in violation of the First Amendment to the United States Constitution and article 1, section 12, of the Constitution of Virginia, respectively. Counts II and III are each asserted against Buckner, Chief Dixon, Capt. Jones, Sgt. Cheatham, and Sgt. James. In Count IV, Plaintiff alleges that Chief Dixon and Telfair violated the Due Process Clause of the Fourteenth Amendment to the

United States Constitution. Finally, Count V asserts that Chief Dixon and Capt. Jones are liable for retaliation under a supervisory liability theory.

## II. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." *Id.* at 555, 570. In considering such a motion, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *T.G. Slater*, 385 F.3d at 841 (citation omitted). Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. DISCUSSION

Between the seven Defendants in this case, they have filed three separate Motions to Dismiss. In the aggregate, those Motions seek the dismissal of the entirety of Plaintiff's defamation claims and supervisor liability claims as well as his retaliation claims as to Buckner.

## a. Defamation

In Count I, Plaintiff alleges common law defamation against Buckner, Chief Dixon, Sgt. Cheatham, Sgt. James, and the Bureau of Police, which they all have moved to dismiss.

In response to the Motions to Dismiss, Plaintiff has conceded that he has failed to state a defamation claim against Buckner and Chief Dixon because he has not pleaded their words with specificity. (Pl.'s Br. Opp'n Buckner's Mot. Dismiss 2, ECF No. 36; Pl's Br. Opp'n Dixon's Mot. Dismiss 2, ECF No. 37; *see Fed. Land Bank of Baltimore v. Birchfield*, 3 S.E.2d 405, 410 (Va. 1939).) Therefore, the only contested defamation claims are those against Sgt. Cheatham, Sgt. James, and the Bureau.

The alleged defamation committed by Sgt. Cheatham, Sgt. James, and the Bureau stems from the two investigations against Plaintiff. Plaintiff asserts that the documents associated with investigation IAU# 15-08 published defamatory statements about Plaintiff's credibility, and the documents associated with investigation IAU# 15-07 published defamatory statements about Plaintiff having made an admission of moral turpitude.

To state a claim for defamation under Virginia law, a plaintiff must establish three elements: "(1) publication of (2) an actionable statement with (3) the requisite intent." *Schaecher v. Bouffault*, 772 S.E.2d 589, 594 (Va. 2015) (quoting *Tharpe v. Saunders*, 737 S.E.2d 890, 892 (Va. 2013)). However, "[a] qualified privilege attaches to 'communications between persons on a subject in which the persons have an interest or duty.'" *Cashion v. Smith*, 749 S.E.2d 526, 532 (Va. 2013) (quoting *Larimore v. Blaylock*, 528 S.E.2d 119, 121 (Va. 2000)). This privilege includes "defamatory statements made between co-employees and employers in the course of employee disciplinary or discharge matters." *Larimore*, 528 S.E.2d at 121.

7

The qualified privilege may be overcome where the defamatory words were spoken with common law malice. *Cashion*, 749 S.E.2d at 532–33; *Larimore*, 528 S.E.2d at 121. Malice can be shown in various way, including where "the statements were made with knowledge that they were false or with reckless disregard for their truth" or where they were "motivated by personal spite or ill will." *Cashion*, 749 S.E.2d at 533 (internal citations omitted).

In this case, Plaintiff concedes that qualified privilege attaches to the statements made about him in IAU# 15-07 and IAU#15-08. (Pl.'s Br. Opp'n Bureau's Mot. Dismiss 10, ECF No. 41.) He argues however that this privilege is defeated because Defendants "made the statements about Plaintiff (1) knowing the statements were false or with reckless disregard of whether the statements were false or not, or (2) because of hatred, ill will, or a desire to hurt the plaintiff." (*Id.*)

While the Complaint makes conclusory statements that Defendants acted with malice, its factual allegations are insufficient to raise Plaintiff's right to relief above the speculative level. Plaintiff has alleged no facts about Sgt. Cheatham or Sgt. James to support an inference that they had ill will towards Plaintiff or that they knew that the statements at issue were false. The Complaint merely states that Defendants "knew the statements about Plaintiff [were] false or made such statements with reckless disregard for whether they were false or not." (Compl. ¶¶ 151, 152; *see also id.* ¶ 140.)

The United States Court of Appeals for the Fourth Circuit addressed this exact issue in *Mayfield v. National Ass'n for Stock Car Auto Racing* when it reviewed a district court's dismissal of a defamation claim for failure to sufficiently plead malice. 674 F.3d 369 (4th Cir. 2012). That complaint alleged malice only by asserting that the defamatory statements

8

"were known by [defendants] to be false at the time they were made, were malicious or were made with reckless disregard as to their veracity." *Id* at 378. The Fourth Circuit affirmed the district court's dismissal, holding that "[t]his kind of conclusory allegation—a mere recitation of the legal standard—is precisely the sort of allegations that *Twombly* and *Iqbal* rejected." *Id.*

Nonetheless, Plaintiff argues that his Complaint contains sufficient facts to allege malice. He highlights the fact that Sgt. Cheatham issued IAU# 15-08 on the same day that Buckner informed Chief Dixon that Plaintiff had been making accusations about Detective Noblin. (Pl.'s Br. Opp'n Bureau's Mot. Dismiss 10.) Plaintiff argues that this temporal proximity is sufficient to plead malice. (*Id.*)

The Court disagrees. The fact that the Bureau initiated an investigation into Plaintiff on the same day that Buckner reported his conduct to Chief Dixon in no way indicates that Defendants acted with malice. The Court would fully expect the Bureau to immediately initiate an internal investigation upon learning that one of its officers was accusing another officer of misconduct concerning pending criminal prosecutions.

At bottom, Plaintiff has pleaded no facts to demonstrate that anyone at the Bureau harbored ill will against him or had any reason to question the truth of the statements which he is challenging. Even when affording Plaintiff every reasonable inference, he has failed to plead the requisite malice to overcome Defendant's qualified privilege. Accordingly, the Court will dismiss Count I in its entirety.

## b. Retaliation

Plaintiff raises retaliation claims against Buckner, Chief Dixon, Capt. Jones, Sgt. Cheatham, and Sgt. James. In Count II, Plaintiff brings a claim pursuant to 42 U.S.C. § 1983,

alleging that these defendants retaliated against him in violation of the First Amendment to the United States Constitution. (*Id.* ¶¶ 159–83.) In Count III, Plaintiff alleges that the defendants' retaliation also violates article 1, section 12 of the Constitution of Virginia. (*Id.* ¶¶ 184–99.) Plaintiff's central argument is that he engaged in protected speech when he raised concerns about Detective Noblin and when he alleged that officer misconduct occurred during the search of the Fisher residence. (*See id.* ¶¶ 171–73, 187–89.) He contends that Buckner retaliated against him "by making false and defamatory statements of fact about Plaintiff to Chief of Police Dixon and/or others in the Bureau." (*Id.* ¶¶ 175, 191.) Plaintiff further alleges that the Bureau and other officers retaliated against him by reassigning him to administrative duties and eventually firing him. (*Id.* ¶¶ 177, 180, 193, 196.) Buckner is the only defendant who has moved to dismiss the retaliation claim.

To state a claim of retaliation for protected speech, a plaintiff must sufficiently plead three elements: "(1) his speech was protected, (2) the 'alleged retaliatory action adversely affected' his protected speech, and (3) a causal relationship between the protected speech and the retaliation." *Raub v. Campbell*, 785 F.3d 876, 885 (4th Cir. 2015) (quoting *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000)). Here, the only material dispute involves the second element: whether Buckner's alleged retaliation—making false and defamatory statements of fact about Plaintiff—adversely affected his protected speech.

The Court must conduct a fact-specific analysis to determine whether Plaintiff has sufficiently pleaded that his First Amendment rights were adversely affected by retaliatory conduct. This inquiry "focuses on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts." *Suarez*, 202 F.3d at 686. In this case, the retaliation claims which Plaintiff raises against

10

Buckner and the Bureau turn on separate axes. While Plaintiff has an employment relationship with the Bureau and other officers, his relationship to Buckner is akin to that of a citizen to a public official. Thus, the Court must evaluate the retaliation claim against her in that context. *See id.* at 686–87.

Additionally, the Court's analysis is focused even more narrowly here because the alleged retaliation committed by Buckner is in the form of speech. The Fourth Circuit has consistently held that where a public official's alleged retaliation is in the nature of speech, "there is no retaliation liability—even if the plaintiff can demonstrate a substantial adverse impact—unless the government speech concerns 'private information about an individual' or unless it was 'threatening, coercive, or intimidating so as to intimate that punishment, sanction, or adverse regulatory action will imminently follow.'" *Baltimore Sun v. Ehrlich*, 437 F.3d 410, 417 (4th Cir. 2006) (quoting *Suarez*, 202 F.3d at 689); *see also Blankenship v. Manchin*, 471 F.3d 523, 528 (4th Cir. 2006). A plaintiff's ability to recover for retaliation in these circumstances is limited because of the competing interests in the public official's own First Amendment rights as well as her obligation to fulfill her public duties. *Baltimore Sun*, 437 F.3d at 417; *Suarez*, 202 F.3d at 687 (noting that in these situations "such speech does not adversely affect a citizen's First Amendment rights, even if defamatory").

In this case, Buckner's alleged retaliation is solely in the nature of speech—false and defamatory statements about Plaintiff. While Plaintiff certainly has a strong interest in his First Amendment right to free speech, Buckner has a competing First Amendment right. Additionally, the facts here indicate that one police officer—Plaintiff—was accusing another police officer—Detective Noblin—of inappropriate conduct pertaining to criminal investigations. Buckner, as an Assistant Commonwealth's Attorney, arguably had a duty to

11

report the situation to the Chief of Police. Thus, she is liable for retaliation only if her statements concerned private information about plaintiff or amounted to threat, coercion, or intimidation.

Plaintiff's Complaint is devoid of any facts to indicate that Buckner's retaliatory statements contained private information or were threating, coercive, or intimidating. The Complaint's only reference to Buckner's retaliatory statement is "[o]n information and belief, Ms. Buckner alleged Plaintiff made false statements concerning Detective Noblin, or words to that effect." (Compl. ¶ 93.) Thus, Plaintiff falls well short of sufficiently pleading that Buckner adversely affected Plaintiff's First Amendment speech rights by revealing private information about him or by threating, coercing, or intimidating him.

The foregoing analysis is equally applicable to Plaintiff's retaliation claims under the First Amendment and the Constitution of Virginia. Accordingly the Court will dismiss both Count II and Court III as they apply to Buckner.

### c. Supervisor Liability

Finally, in Count V, Plaintiff alleges that Chief Dixon and Capt. Jones are liable for retaliation in violation of the First Amendment under a supervisory liability theory pursuant to 42 U.S.C. § 1983. Chief Dixon and Capt. Jones both seek the dismissal of Count V, arguing that Plaintiff has failed to plead sufficient facts to state a supervisory liability claim.

Under 42 U.S.C. § 1983, a supervisor is liable for the actions of a subordinate only if three elements are satisfied: "(1) he knew that his subordinate 'was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury'; (2) his response showed 'deliberate indifference to or tacit authorization of the alleged offensive practices'; and (3) that there was an 'affirmative causal link' between his inaction and the constitutional injury."

*King v. Rubenstein*, 825 F.3d 206, 224 (4th Cir. 2016) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). Importantly, a supervisor cannot be held liable pursuant to § 1983 under a *respondeat superior* theory of vicarious liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (rejecting that "a supervisor's mere knowledge of his subordinate's [unconstitutional conduct] amounts to the supervisor's violating the Constitution"); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) ("The doctrine of *respondeat superior* has no application under [42 U.S.C. § 1983]."). Indeed, satisfying the knowledge requirement of the first prong requires more that the mere knowledge of an isolated constitutional violation. Rather it requires knowledge "that the conduct is widespread, or at least has been used on several different occasions." *Shaw*, 13 F.3d at 799.

Chief Dixon and Capt. Jones argue that the complaint merely alleges that they had knowledge of the single purported retaliatory act committed by Sgt. Cheatham. They contend that this is insufficient to state a supervisory liability claim. (*See* Dixon's Br. Supp. Mot. Dismiss 9–11, ECF No. 15; Bureau's Br. Supp. Mot. Dismiss 9–11, ECF No. 31.)

In response to Chief Dixon's Motion, Plaintiff describes a long history of the Bureau's violations of its officer's First Amendment Rights; yet he acknowledges that these facts are absent from the Complaint. (Pl.'s Br. Opp'n Dixon's Mot. Dismiss 9.) Later, in response to Capt. Jones's identical argument, Plaintiff appears to have changed his position, expressly conceding that he has failed to state a supervisory liability claim. (Pl.'s Br. Opp'n Bureau Mot. Dismiss 2.)

To the extent that Plaintiff still takes the position that he has pleaded sufficient facts to state a supervisory liability claim against Chief Dixon, the Court finds that this argument is unpersuasive. As it pertains to supervisory liability, the Complaint contains no more facts

relating to Chief Dixon than it does to Capt. Jones. Mere knowledge of one incident of retaliation is insufficient to confer supervisory liability under § 1983.

Therefore, the Court will dismiss Count V.

### IV. CONCLUSION

Based on the foregoing, Defendants' Motions to Dismiss (ECF Nos. 14, 18, 30) will be granted. Count I and Count V will be dismissed without prejudice in their entirety. Count II and Count III will be dismissed without prejudice as to defendant Buckner.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: April 19, 2017
Richmond, VA